# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

VALARIE ANTIONETTE JAMES,

    PLAINTIFF,

VS.                                 CASE NO.: CV-11-J-2603-S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

## **MEMORANDUM OPINION**

    This matter is before the court on the record and briefs of the parties. The court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

### **Procedural Background**

    The plaintiff applied for Disability Insurance Benefits, alleging an inability to work January 1, 2007, due to non-Hodgkins lymphoma,[1] high blood pressure and

---

[1] Non-Hodgkin's lymphoma is cancer of the lymphoid tissue, which includes the lymph nodes, spleen, and other organs of the immune system. Non-Hodgkin's lymphoma can cause a variety of symptoms, depending on what area of the body is affected by the cancer and how fast the cancer is growing. Symptoms may include night sweats, fever and chills, itching, swollen lymph nodes in the neck, underarms, groin, or other areas, and weight loss. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001607/

trigeminal neuralgia (R. 153). She alleges trigeminal neuralgia[2] causes flares of severe pain, sometimes two or three times a day, and some days not at all (R. 55, 57). Because the pain is made worse by cold, she described daily severe pain from November to February, which cleared up in the warmer months to only one or two bouts per day (R. 58-59). The medication she takes, Tegretol, makes her drowsy (R. 52-53). The plaintiff also suffers from non-Hodgkins lymphoma, currently in remission, but which does cause ongoing fatigue (R. 56).

The administrative law judge (ALJ) reached a determination that the plaintiff was not disabled at any time from January 1, 2007, through the date of his decision, November 20, 2009 (R. 29). The plaintiff appealed this decision to the Appeals Council which denied her request for review on May 23, 2011 (R. 1-3). The ALJ's decision thus became the final order of the Commissioner. *See* 42 U.S.C.§ 405(g). This action for judicial review of the agency action followed (doc. 1). The court has considered the entire record and whether the decision of the ALJ is supported by substantial evidence. For the reasons set forth herein, this case is **REVERSED** and **REMANDED** to the Commissioner for further action consistent with this opinion**.**

---

[2]Trigeminal neuralgia is a nerve disorder that causes a stabbing or electric-shock-like pain in parts of the face. Symptoms include very painful, sharp electric-like spasms that usually last a few seconds or minutes, but can become constant; pain usually only on one side of the face, often around the eye, cheek, and lower part of the face; pain may be triggered by touch or sounds, brushing teeth, chewing, drinking, eating or lightly touching the face. *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001751/

**Factual Background**

The plaintiff was born on November 14, 1962 (R. 40). She is a high school graduate and completed one year of college (R. 44). The plaintiff worked for Liberty National Life Insurance as an interviewer from 2000 until 2005 when her medical problems progressed to a point that she could not perform that job (R. 45-47, 50). Her employer moved her to a filing job, where she remained until the end of 2006 (R. 45-47). She drew long term disability benefits until 2008 (R. 47-48). She testified that the pain from trigeminal neuralgia has progressively worsened since that time (R. 55).

In a typical day, the plaintiff reads and watches TV (R. 56). Some days she can not do anything, including eat, because of pain (R. 56). She does not drive and has never had a driver's license (R. 43). The plaintiff testified that since she stopped working, sometimes she has pain daily, and sometimes she can go a month without pain (R. 57). When she has pain, it is usually about an eight on a scale of one to ten, and lasts from one to 30 minutes, after which it eases up and goes away (R. 59). She is also woken by pain one or two times per night, two to three nights per week (R. 60). In her Daily Activities Questionnaire, the plaintiff stated Tegretol makes her sleepy, and that when her pain flairs up, she has to have help caring for her personal needs (R. 170). She cooks except when she is not feeling well, and otherwise is able

to attend to all activities of daily living such as cleaning, laundry, and washing dishes (R. 171). She goes to church when she can, and talks with friends and relatives when she is not in pain (R. 172). In response to how her condition keeps her from working, the plaintiff responded, "I never know when I am going to have a crisis with the trigeminal neuragial (sic). The pain is so severe I start screaming at times" (R. 173).

At the hearing, the ALJ heard testimony from a medical expert, Dr. Anderson. Dr. Anderson described the plaintiff as suffering from chronic facial pain due to a combination of pansinusitis, trigeminal neuralgia,[3] allergic rhinitis,[4] and pyria;[5] a history of treatment for non-Hodgkin's lymphoma, in remission; an episode of shingles, and other non-contributory medical issues (R. 62). The plaintiff was first diagnosed with non-Hodgkin's lymphoma in 1997, to which Dr. Anderson referred to the plaintiff as "cured" because she had not had a recurrence in ten years[6] (R. 62-63). According to Dr. Anderson, these ailments would result in the plaintiff being

---

[3] Dr. Anderson defined trigeminal neuralgia as nerve pain in the facial nerves, the cause of which is unknown and which is treated symptomatically (R. 64).

[4] This is an allergy which causes swelling of the mucous membranes of the upper respiratory tract, triggered by weather changes, temperature and excessive heat or cold (R. 64).

[5] Dr. Anderson described pyria as an infection of the gums and teeth (R. 63).

[6] Dr. Anderson's testimony did not reflect that he had seen the medical records from 2006 where plaintiff had a Mediport put in for her to receive long-term chemotherapy due to non-Hodgkins lymphoma. *See e.g.* R. 246, 248-249.

limited to the full range of light work, without excessive exposure to temperature changes (R. 65).

The Vocational Expert (VE) testified that the plaintiff's past work ranged from sedentary to medium in exertional level; and skilled to unskilled in nature (R. 67-68). None of her past work included skills transferrable to other work (R. 68, 70), with the possible exception of her filing duties at Liberty National, which the VE classified as "general clerk" (R. 71). She would have skills from that work such as computer skills, filing, answering the phone, and dealing with people, which would transfer to the sedentary level (R. 71). According to the VE, other sedentary, semiskilled jobs exist in significant number in the regional economy (R. 72).

The ALJ asked the VE to assume an individual of the plaintiff's age, educational, and vocational background who could perform light work with limitations from extreme cold, hear, humidity, temperature changes, unprotected heights, moving machinery, and operation of a motor vehicle (R. 72). Further limitations would be a requirement that the "jobs deal primarily with objects and not people; and those that require an individual to communicate orally, only on an infrequent and, and brief basis" (R. 72). The VE testified that such limitations would exclude all of plaintiff's past work, but would allow for jobs which exist in significant numbers such as security guard, food prep person, janitor and cleaner (R. 72-73). If

the same limitations were put forth with the requirement of a sedentary work level, jobs such as surveillance system monitor would be available (R. 73). He further testified that if the plaintiff's testimony was found credible, she would be precluded from all work, due to limitations from pain multiple days per month (R. 73-74).

The medical evidence in the record at the time of the hearing demonstrates that the plaintiff is followed by Dr. Bohnenkamp. The plaintiff apparently did well from November 2004 until November 2006 (R. 218). However, those same records have notations such as that plaintiff has pain daily in June 2006 and describe her pain as right sided, sharp and shooting (R. 220, 230). The plaintiff reported the pain was so bad she could not brush her teeth (R. 230). She classified the pain as a 10 out of 10 in February 2006 and an 8 out of 10 in April 2006 (R. 230-231). An MRI from that time frame noted the plaintiff to suffer from "severe, pan sinusitis" based on a findings of "severe mucosal T2 hyperinstensity in the maxillary, ethmoid, fronal and stenoid sinuses" (R. 250). Plaintiff is followed at the Cooper Green ENT Clinic. Those records show ongoing complaints of sinus problems and right facial pain from trigeminal neuralgia (R. 217, 228).

The records reflect she was seen in follow up from an emergency room visit due to sinus issues which were diagnosed as sinusitis with a history of chronic sinusitis, despite surgery in January 2006 (R. 218, 224, 239-240, 242-244). Plaintiff

described her pain as worse following the surgery, although Tegretol helped (R. 231, 233). The plaintiff has also received "on and off chemo" since her diagnosis of non-Hodgkin's lymphoma ten years previously (R. 213). Specifically, the plaintiff was noted to have "lymphoma in need of chemotherapy" in January 2006 (R. 246, 248). She had surgery for the insertion of a Mediport because she required prolonged chemotherapy (R. 248-249). She was later noted to need "restaging" for her follicular lymphoma, although the record reflects she was "doing well" (R. 214).

The January 2007 notes that the plaintiff was "now working" although several records reference providing the plaintiff work excuses for certain days (R. 214, 216, 217). Pain on the right side of plaintiff's face was noted as was "facial palsy persists" (R. 213). In March 2007 Dr. Bohnenkamp stated that plaintiff's problems from trigeminal neuralgia are better with Tegretol and warm weather, and that the plaintiff has a referral to "neuro" (R. 212). Non-Hodgkin's lymphoma, malignant, is noted as a diagnosis, with the further notation that the plaintiff was not receiving treatment for it currently (R. 212).

In April 2007 the plaintiff complained of pain at the 10 out of 10 level due to a trigeminal neuralgia exacerbation but she was noted not to take the Tegretol consistently (R. 256). She was told to take it consistently and given a Lidocaine patch for acute pain (R. 256). In July 2007 the plaintiff still complained of face and

gum pain, but her pain level was at a four and her trigenminal neuralgia was noted to be improved with medical compliance (R. 262). An August 2007 record from plaintiff's oncologist notes "NHL, low grade, dx'd 10 yrs ago; doing well right now in terms of C4 diagnosis, however, has significant problems w/trig. neuralgia & sinusitis" (R. 281).

The plaintiff was sent for a consultative examination with Dr. Charles Carnal in July 2007 (R. 264). He recorded that the plaintiff's pain was a 9 out of 10 when she experienced it, but Tegretol, decreased touch and keeping her mouth closed alleviated the pain, whereas chewing and speaking worsened it (R. 264). Non-Hodgkin's lymphoma was noted to be in remission (R. 264-265). The plaintiff reported she was independent with all activities of daily living (R. 265). She was noted to be obese with normal muscle tone and strength. Her sole diagnoses were trigeminal neuralgia and non-Hodgkin's lymphoma (R. 267).

The plaintiff's oncologist wrote a letter on her behalf on August 18, 2007, which reads as follows:

> To Whom It May Concern;
>
> Ms. Valarie Carter has non Hodgkin's lymphoma. It is an incurable disease & pt. will have on & off symptoms of weakness, easy fatigability, night sweats & weight loss. Patient may also need to go on chemotherapy when above symptoms occur.
> Please extend to her the assistance she needs. Thank you.

(R. 290).

In October 2007 the plaintiff was noted to be pain free and reported that when she did have facial pain, it was tolerable, although the onset of cold weather was causing her concern (R. 278). The plaintiff was sent by her oncologist for monthly port flushes. In September 2007 she complained of pain at a 7 out of 10 level (R. 279). In December 2007 she was noted to have facial pain at a level of 6 out of 10 (R. 273).

Records show that in January 2008 the plaintiff complained of increased facial pain, and that the pain was more severe (R. 271). Tegretol and steroids were noted to have been helpful in the past (R. 271). Her pain was recorded as a 10 out of 10 (R. 271). In April 2008, Dr. Bohnenkamp's records reflect that the plaintiff felt well, but had severe "shooting pain" from trigeminal neuralgia intermittently (R. 270). These records reflect that in June 2008 Dr. Bohnenkamp completed disability forms for the plaintiff, noting the plaintiff was

> still w/ significant disabling pain ® jaw 2○/2 trigeminal neuralgia. In cold times & when has sinusitis, pain flares 2-3x/d x 1h each time. States only helpful think @ that time is 'crying.' Incapacitated when pain flare. Other times of year pain is sporadic, possible occuring just 1x/2 wks

(R. 287). At the time her pain was a 5 out of 10 (R. 287).

9

A July 2008 record reflects plaintiff's report that Tegretol was helping until her sinuses started draining, and her doctor again prescribed Lidocaine patches for acute pain exacerbation (R. 286). In September of that year, plaintiff complained of right side facial pain at a level of 9, caused by sinus drainage aggravating her nerve pain (R. 284). Dr. Bohnenkamp's records from September note pain at a 9 out of 10 and describe plaintiff as "crying/writhing in pain" (R. 285). She was unable to eat or brush her teeth (R. 285). She was prescribed Prednisone and Lortab (R. 285). An October 2008 record shows complaints of pain at a level of 5 out of 10. While surgery was noted to be an option for mild ethmoid disease, there was a possibility that surgery could make trigeminal neuralgia worse (R. 283).

A record from June 2009 reflects that the plaintiff had done well until two weeks previously when pain increased, and that she was having pain every 2 to 3 hours (R. 297). The plaintiff was trying not to move her facial muscles, and she was told to increase her Tegretol dosage and prescribed a Medrol Dose pack and Lidocaine patches (R. 297). Another record from the same time period reflects her pain level was a 7 (R. 298).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable

to perform his previous work. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987). If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). This court also must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir.1993). No presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1235 (11th Cir.1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991).

Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker*, 826 F.2d at 1001. When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ found that the plaintiff suffered solely from the severe impairment of trigeminal neuralgia (R. 22). He specifically found that non-Hodgkin's lymphoma is not a severe impairment on the belief that it had been in remission for over 10 years (R. 22-23). He found no impairment or combinations of impairments

which, singly or in combination, met or medically equaled the criteria of any of the listing of Impairments found in 20 CFR 404, Subpart P, Appendix 1 (R. 23). The ALJ concluded that the plaintiff retained the residual functional capacity to perform light work, with further limitations from exposure to extreme cold, heat, humidity and temperature changes, unprotected heights, hazards of moving machinery, and operating a motor vehicle as part of job duties; and further limitations to jobs that deal with objects instead of people and jobs that do not require frequent oral communication (R. 24).

The ALJ considered the plaintiff's subjective complaints of pain stemming from trigeminal neuralgia, but classified the same as "intermittent," which plaintiff readily admits (R. 25). Without any inquiry as to the frequency or duration of pain plaintiff experiences from this disease, the ALJ determined that because the plaintiff has received the "necessary and appropriate treatment for all of her impairments" she is capable of sustained work activity (R. 26). Additionally, the fact that the plaintiff has not had further surgery seemed to weigh in the ALJ's decision, although the evidence established that the plaintiff discussed surgery for her sinus problems, but was warned the same could worsen her trigeminal neuralgia (*Id*).

Thus, based upon his review of the medical evidence, the ALJ determined the plaintiff retained the residual functional capacity to perform a limited range of light

work (R. 27). The ALJ opted not to consider any limitations the plaintiff had from non-Hodgkin's lymphoma, and failed to include any discussion of whether bouts of intermittent severe pain could prevent sustained substantial gainful employment.

Having found the plaintiff could perform a limited range of light work, the ALJ next determined that the plaintiff could return to her past relevant work as a general office clerk (R. 27). He additionally found that the plaintiff could perform other jobs in the national economy (R. 28). The plaintiff argues that the ALJ erred in failing to consider non-Hodgkin's lymphoma a "severe impairment," and failed to properly apply the Eleventh Circuit's three-part pain standard. Plaintiff's memorandum, at 5, 7.

The severity of a medically ascertained disability must be measured in terms of its effect upon ability to work." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986). "[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1031-32 (11th Cir.1986). Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984). A "severe impairment" is a "de minimis requirement which only screens

out those applicants whose medical problems could 'not possibly' prevent them from working." *Stratton v. Bowen*, 827 F.2d 1447, 1452 n. 9 (11th Cir.1987) (*quoting Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir.1985)) The finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.1987).

Given the facts of this case, the court is of the opinion that the plaintiff's non-Hodgkin's lymphoma should have been considered a "severe impairment" for the simple reason that plaintiff requires sporadic chemotherapy and other ongoing treatment, which is supported by her medical records. The ALJ did not investigate whether the plaintiff was able to maintain employment while receiving chemotherapy, or whether she required a sustained absence from work. Additionally, the ALJ's finding, based on Dr. Anderson's testimony that plaintiff was "cured" of non-Hodgkin's lymphoma, is in direct contradiction of the medical records which reflect the plaintiff needed chemotherapy at least one time after her initial diagnosis and refer to plaintiff as suffering from "malignant lymphoma."

The ALJ also determined that because the plaintiff's pain is "intermittent" it would not interfere with her ability to maintain employment, although the ALJ failed

15

to investigate, discuss, or consider whether intermittent pain could be disabling. Rather, the ALJ considered that "[i]t appears from the record that the only prescription medication the claimant is taking for her trigeminal neuralgia is Tegretol" and that the plaintiff "has not been in the hospital overnight since March 2007 and that she has been to the emergency room once complaining of pain" as deciding factors that the plaintiff could maintain employment. *See* R. 25.

Proper application of the pain standard, used when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms, requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir.2002). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.* "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir.1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination "cannot merely be a broad rejection which is not enough to enable ... this Court to conclude that the ALJ

considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1210-11(11th Cir.2005)(quotations and alterations omitted). Therefore, if a plaintiff testifies she suffers from pain at a level that would prevent work and she satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

In the facts before this court, the plaintiff has alleged disabling pain, but readily admits it is intermittent. Her testimony establishes that she can go months at a time without a flare up, and that at other times she has multiple daily bouts of pain for months on end. Medical records reflect that this pain can be so severe that the plaintiff is "crying/writhing" in pain. Absent from the ALJ's decision is any development or consideration of whether intermittent bouts of severe pain can be disabling. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits...." *Sims v. Apfel*, 530 U.S. 103, 110–111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), citing *Richardson v. Perales*, 402 U.S. 389, 400–401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997), *citing Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981).

The evidence establishes that the plaintiff suffers from two separate ailments which both cause intermittent severe restrictions and limitations. Specifically, while the evidence supports the ALJ's determination that the plaintiff can perform a limited range of light work, there is no evidence which supports or refutes that the plaintiff can do so on a daily ongoing basis.  An "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on *a regular and continuing basis*, and the RFC assessment must include a discussion of the individual's abilities on that basis. *A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule*."  SSR 96-8P, 1996 WL 374184, 2 (emphasis added).

The ALJ's failure to develop the record sufficient to determine whether, despite these ailments, the plaintiff can maintain substantial gainful employment on a sustained basis, leaves this court with the firm conviction that the record has not been properly developed.  Because of this error, the court must remand this case to the Commissioner.

## Conclusion

Based on the foregoing, the court is of the opinion that the decision of the ALJ was founded upon errors of law, and therefore the decision of the Commissioner must be  **REVERSED**  and this case is **REMANDED** for further consideration of the

evidence. Specifically such consideration should include, but is not limited to, whether the records reflecting the plaintiff received chemotherapy in 2006 would impact the ALJ's finding that the plaintiff's non-Hodgkin's lymphoma has been in remission "over ten years without recurrence" (R. 22-23), and whether the plaintiff's trigeminal neuralgia would cause more absences on an ongoing basis than employers will tolerate. Should a new hearing be found necessary, the same shall include testimony from a VE including a hypothetical questions which take a realistic account of expected absences into consideration.

**DONE** and **ORDERED** the 8th day of February, 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE